(54 App. Div. 129.)

MADISON v. GROSS et al.

(Supreme Court, Appellate Division, Second Department.  October 26, 1900.)

PRINCIPAL AND AGENT—CONVERSION OF CHATTELS—DEMAND BY PRINCIPAL—
LIABILITY OF AGENT.
    Defendants were the agents for plaintiff for a certain bleach, which
    was shipped in carboys, under a contract that the bleach was to be
    shipped to customers indicated by defendants, and charged to defendants,
    and that credit would be given to defendants for carboys returned by
    them.  Certain empty carboys were delivered by a customer to the de-
    fendants, on whom plaintiff made no demand for their return.  *Held*, that
    defendants were not liable for a conversion of such carboys, since they
    came into their possession in a lawful manner, and were not demanded of
    defendants by the owner.

Appeal from municipal court, borough of Brooklyn, Second dis-
trict.

Action by Margaret T. Madison against August Gross and another
for the conversion of chattels.  From a judgment in favor of plain-
tiff, defendants appeal.  Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD,
HIRSCHBERG, and JENKS, JJ.

Herman M. Schaap, for appellants.
Carl J. Heyser, for respondent.

WOODWARD, J.  It appears from the evidence that Gross &
Horn, prior to the commencement of this action, were the selling
agents of the plaintiff for her special bleach or peroxide, under a writ-
ten agreement; that the peroxide was shipped in carboys; and that
these carboys were valued by agreement at $1.50 each.  The evidence
does not fully disclose the agreement, but there is enough to indicate
that the peroxide, together with the carboys, was shipped to the
customers indicated by Gross & Horn; the same being charged to the
defendants, who were given credit at the rate of $1.50 for each re-
turned carboy.  Prior to January 1, 1900, the plaintiff had delivered
from time to time, upon the order of the defendants, quantities of
peroxide to one Teschmacher, and these shipments were all charged
to Gross & Horn.  There appears to have been some difficulty be-
tween the plaintiff and these defendants, and an action was com-
menced against the defendants, evidently involving a settlement of
their accounts.  At least, the agency was terminated, and from the
3d day of January, 1900, the plaintiff made shipments direct to
Teschmacher.  It appears from the evidence that these shipments be-
tween the 3d of January and the 5th of February had aggregated 116
carboys, and that only 90 of these had been returned to the plaintiff,
so that on the 5th of February, 1900, Teschmacher had in his posses-
sion 26 carboys which had come originally from the plaintiff; but
whether they belonged to the plaintiff, or whether they were the prop-
erty of Teschmacher, subject to his right to return them and receive
a credit for their value, does not appear.  Mr. Rentrop, Teschmacher's
office manager, testified that he delivered 26 carboys to Gross &
Horn shortly before the commencement of this action, in accordance
with their order, as follows: "Please deliver to our carman empty

carboys belonging to us, and oblige.   Yours, &c., Gross & Horn, per A. V.;" that these 26 carboys were delivered to Teschmacher in December, through Gross & Horn, and that no carboys shipped Teschmacher in January, February, and March, 1900, and up to April 12th, the date of the commencement of this action, were given by them to Gross & Horn.   The same witness also testified, in behalf of the plaintiff, that:

"As far as I know, they were Gross & Horn's carboys.   Mr. Hazen [plaintiff's manager] stated, and wrote us letters, whenever Gross & Horn asked us for these carboys we should return them."

The defendants, who had put in a general denial to the claim of the plaintiff that the defendants "wrongfully and unlawfully took and detained twenty-five (25) carboys, the property of the plaintiff, and converted the same to their own use, said carboys being of the agreed price and fair and reasonable value of $37.50," did not offer any evidence, but relied upon their motion to dismiss upon the ground "that by their own evidence the carboys shipped to us belonged to us, and on the further ground that they have not shown possession."   It does not appear from the evidence, so far as we are able to discover, that any carboys belonging to the plaintiff came into the possession of the defendants.   Gross & Horn claimed to own the carboys delivered to them by Teschmacher, and the latter's manager, the plaintiff's own witness, testifies that, so far as he knows, they were the property of the defendants.   The only testimony as to the plaintiff's property in the carboys is that of the plaintiff's manager, to the effect that he saw some carboys being delivered to the defendants, but he is not sure that they were the carboys in suit, and his testimony as to "our goods being taken off there"—"our carboys"—is, at best, vague; and it seems, from the evidence, not improbable that the carboys were actually sold to the defendants and charged in their account, which would make the theory of conversion wholly untenable.   The evidence shows that there was an agreement between the plaintiff and defendants as to the price of these carboys, and that they were to be valued at $1.50 apiece between them, and the idea of an agreement as to the price of goods seems at present inconsistent with the theory of conversion.   The carboys appear to have been lawfully in possession of the defendants, and when the chattels of the plaintiff (assuming these to have been the property of the plaintiff, and the evidence does not establish this) have not been wrongfully taken possession of by the defendant, but have come into his hands in a lawful manner, he cannot be made responsible for a conversion of them until they have been demanded of him by the owner, or the person entitled to possession of them, and he has refused to deliver them up.   Castle v. Bank, 148 N. Y. 122, 126, 42 N. E. 518, and authorities there cited.   The only evidence of a demand in the case attempted to be made by the plaintiff was the answer of Mr. Hazen to the question:   "Did you demand the return of these carboys?   A. Yes; there was a demand made for them."   The meaning of this reply is not very clear, and does not indicate with any certainty either by or upon whom the demand was made.   So far as we know, from the evidence, the carboys belonged to Gross & Horn.   They were carboys which had been

delivered to Teschmacher on the order of Gross & Horn, the selling agents of the plaintiff, under a written agreement, and were quite likely involved in the controversy which appears to have been pending between them in another action at the time. It seems to us that any proper understanding of this controversy is quite difficult, if not impossible, without the aid of the written agreement between the parties, which does not appear in the evidence.

The judgment appealed from should be reversed.

Judgment of the municipal court reversed, and new trial ordered; costs to abide the event. All concur.